HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BIOORIGYN, LLC, and JOANNA
ELLINGTON CLIFTON,

    Plaintiffs,

    v.

FAIRHAVEN HEALTH, LLC,

    Defendant.

Case No. 2:20-cv-00285-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment (Dkt. # 23) and the parties' respective motions to seal (Dkt. ## 52, 56). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Defendant's dispositive motion is **GRANTED in part** (Dkt. # 23), and the parties' motions to seal are **GRANTED** (Dkt. ## 52, 56).

## II. BACKGROUND

Plaintiff Joanna Ellington is a scientist specializing in reproductive and genital health. Dkt. # 1 ¶ 19. In 2001, she formed a company, Plaintiff BioOrigyn LLC, that offers "fertility-friendly" and feminine care products. *Id.* Initially, Defendant Fairhaven Health LLC ("Fairhaven") was a customer of BioOrigyn until the two companies "entered into a business collaboration on product development." *Id.* ¶¶ 5-6. BioOrigyn

ORDER – 1

agreed to help Fairhaven develop Fairhaven-branded products in exchange for royalty payments. *Id.* ¶ 6. The products would come to be known as IsoFresh (a balancing vaginal gel), BabyIt (a perineal massage and postpartum comfort gel), and BabyDance (a fertility lubricant). *Id.* ¶ 28. The products were marketed under the "IsoLove" brand name, and the Court refers to the products collectively as "IsoLove products." *Id.* ¶ 29.

In developing the products, the parties' entered a series of agreements, only one of which is relevant here. *Id.* ¶¶ 22-26, 32. On May 1, 2015, Dr. Ellington and Fairhaven entered an agreement ("2015 Likeness Agreement"),[1] granting Fairhaven "the right to use Dr. Ellington's Name and Likeness in relation to certain products," subject to several conditions. *Id.* ¶ 32; Dkt. # 3. Dr. Ellington's name and likeness[2] include "her full and formal names, nicknames, or aliases" and her "image, signature, voice, likeness and other representations." Dkt. # 1 ¶ 11. Plaintiffs bring this action based on Fairhaven's alleged "misappropriation" of Dr. Ellington's likeness and alleged "false and deceptive commercial practices related to unauthorized and commercial use" of her likeness. *Id.*

Plaintiffs allege that Fairhaven misappropriated Dr. Ellington's likeness because, despite terminating the 2015 Likeness Agreement months after entering it, Fairhaven continued to use Dr. Ellington's likeness. *Id.* ¶¶ 34-35. Plaintiffs cite several instances. They claim that after termination Fairhaven used her likeness to promote Dr. Ellington as a "Medical Health Advisor" on Fairhaven's website. *Id.* ¶¶ 38-40. In addition, they claim that Fairhaven used her likeness to promote the IsoLove products. *Id.* ¶¶ 41-57. Lastly, they claim that Fairhaven used her likeness to promote one product, "FertilAid For Men," in a way that "went beyond the terms" of the 2015 Likeness Agreement. *Id.* ¶¶ 58-68.

Plaintiffs claim that Fairhaven engaged in false and deceptive commercial

---

[1] The complaint labels this agreement the "Likeness License." Dkt. # 1 ¶ 8.
[2] Unless otherwise stated, the Court refers to Dr. Ellington's name and likeness collectively as "likeness."

ORDER – 2

practices, on the other hand, because it made misstatements in its product advertisements. *Id.* ¶¶ 69-85. For example, Plaintiffs allege that Fairhaven advertised one IsoLove product as having "no irritation potential," despite "user feedback" to the contrary. *Id.* ¶ 70. Another example, Plaintiffs allege that Fairhaven promoted FertilAid For Men, a fertility pill, as being "clinically proven" to "improve sperm count, motility and morphology," even though the clinical study referred to in fact found no such improvement. *Id.* ¶¶ 76-85 (emphasis omitted). The clinical study was conducted by Dr. Ellington. *Id.*

On February 24, 2020, Plaintiffs sued Fairhaven. Dkt. # 1. They assert five claims: breach of the 2015 Likeness Agreement, false association and false advertising in violation of the Lanham Act, infringement of personality rights, and unfair business practices in violation of Washington's Consumer Protection Act. *Id.*

Fairhaven now moves to dismiss, or in the alternative, for partial summary judgment. Dkt. # 23. The motion is ripe for review.

### III. LEGAL STANDARD

Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject-matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id.* Once it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A party may bring a factual challenge to subject-matter jurisdiction, and in such cases the court may consider materials beyond the complaint. *PW Arms, Inc. v. United States*, 186 F. Supp. 3d 1137, 1142 (W.D. Wash. 2016) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see also McCarthy v. United States*,

ORDER – 3

850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

## IV. DISCUSSION

Fairhaven advances three arguments: Plaintiffs' claims are subject to binding arbitration, Plaintiffs' claims fail because Ms. Ellington consented or acquiesced to Fairhaven's use of her likeness, and Plaintiffs' claims fail because they are untimely. Dkt. # 23 at 2-3. The Court need only address the first. The Court agrees with Fairhaven that this case must be dismissed and submitted to arbitration, and the Court ends its analysis there.

### A. Motions to Seal (Dkt. ## 52, 56)

In a previous order, the Court denied without prejudice the parties' unopposed motions to seal. Dkt. # 51. Though the Court agreed that the documents requested to be sealed were confidential and proprietary, it denied the motions because as presented they did not meet the "compelling reasons" sealing standard. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The parties failed to explain what injury would result if the documents are not sealed or why a less restrictive alternative would be insufficient. Dkt. # 51.

Since then, the parties have refiled their motions to seal. Dkt. ## 52, 56. They have revised their motions and pared their requests for redactions. *Id*. They have also publicly refiled many documents or portions of documents that were previously filed under seal. Dkt. ## 53-54, 57-62. The Court has reviewed the parties' submissions and determines that the parties have remedied the deficiencies of their previous sealing motions. The Court finds compelling reasons for the currently sealed documents to remain so. Dkt. # 55, 63-64.

ORDER – 4

## B. Subject Matter Jurisdiction[3]

Because the Federal Arbitration Act ("FAA") requires courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits court involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotations omitted). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 483 (1989).

"The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal citation omitted). To determine "whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In determining whether an arbitration agreement encompasses the dispute at issue, district courts must be mindful that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Any doubts as to the scope of an arbitration agreement should be resolved in favor of arbitrability. *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999).

Part one of the Court's inquiry, whether an arbitration agreement exists, is not seriously in dispute. The parties' 2015 Likeness Agreement indeed contains an arbitration clause. Dkt. # 3 at 6-7. Plaintiffs' argument is not that no such clause exists,

---

[3] Fairhaven moves to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction. Dkt. # 23 at 4-5.

ORDER – 5

only that the existing clause fails to reach their asserted claims.  Dkt. # 53 at 7-12.  The clause's reach, however, must be analyzed under part two of the inquiry.  Under part one, the Court finds that Fairhaven has met its initial burden: a valid arbitration agreement exists.

Part two is whether the arbitration agreement encompasses the dispute at issue.  On this front, the Court is guided by *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999).  In that case, the Ninth Circuit determined that an arbitration agreement containing the phrase "arising in connection [with this Agreement]" must be construed liberally.  *Id.* at 720-21.  Such language reaches every dispute between the parties that (1) have a "significant relationship to the contract" and (2) have their "origin or genesis in the contract."  *Id.* at 721.  A plaintiff's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."  *Id.*  The Court "must examine the factual allegations raised to determine which of [Plaintiffs'] causes of action are arbitrable."  *Id.*

Like the arbitration agreement in *Simula*, the arbitration clause in the 2015 Likeness Agreement is broad and must be liberally construed.  The arbitration clause maintains that ▮ Dkt. # 3 at 6 (emphasis added).[4]  Given the broad arbitration clause, the Court must identify every dispute that has a "significant relationship to the contract" or has its "origins or genesis in the contract."  *Simula*, 175 F.3d at 721.

      i.    **Breach of the 2015 Likeness Agreement (Count I)**

Plaintiffs' first claim for breach of the 2015 Likeness Agreement is encompassed by the arbitration clause.  In their complaint, Plaintiffs allege that the agreement was

---

[4] Pursuant to the Court's previous order, Dkt. # 22, the 2015 Likeness Agreement is filed under seal.  The Court quotes the agreement here and redacts the quotation accordingly.

ORDER – 6

valid, that Fairhaven terminated the agreement, that the termination required Fairhaven to "discontinue all use of and reference to Dr. Ellington's Name and Likeness," that the obligation "survive[d] termination of the agreement," and that Fairhaven breached the agreement by continuing to use Dr. Ellington's name and likeness after termination. Dkt. # 1 ¶¶ 86-92. This claim has its very genesis and origin in the 2015 Likeness Agreement. To resolve the dispute, one must assess the rights granted under the agreement, the cessation of those rights, and the breach of the contract by continued use of those rights. Under the likeness agreement's arbitration provision, that task has been assigned to an arbitrator. Hence, Plaintiffs' first claim for breach of contract is subject to arbitration.

Plaintiffs do not dispute this. Indeed, they do not address the arbitrability of their first claim at all. *See* Dkt. # 53 at 7-12. Instead, they recast the scope of the 2015 Likeness Agreement and claim and seek to "drop" the claim altogether. *Id.* According to Plaintiffs, the 2015 Likeness Agreement is narrow: it "governs only the use of the Likeness with respect to the Blog entries for the Approved Products," such as FertilAid For Men. *Id.* at 13. They say that their breach of contract claim is similarly limited. *See id.* at 7-9. In any event, "[t]o simply the issues," Plaintiffs agree to "drop their claims related to the [FertilAid For Men] product . . . including Count I in its entirety . . . and portions of Counts II and IV . . . that are related to [FertilAid For Men]." *Id.* at 11 n.7.

In response, Fairhaven argues that Plaintiffs are seeking to "rewrite" the complaint. Dkt. # 46 at 3. Plaintiffs are dropping their breach claim, Fairhaven says, simply to "avoid" and "circumvent" the arbitration clause. *Id.*

Plaintiffs do not dispute that their first claim must be sent to arbitration. Their argument is not that their breach claim is not arbitrable; their argument is that the Court should ignore the claim altogether because they would now like to "drop" it. Despite this maneuver, the Court must analyze the claims and factual allegations pleaded in the complaint—not Plaintiffs' representations on summary judgment—to determine whether they are encompassed by the 2015 Likeness Agreement's arbitration provision.

ORDER – 7

As pleaded, Plaintiffs' breach of contract claim is not as limited as Plaintiffs now say. It is not merely limited to blogs and FertilAid For Men. According to the complaint, "Defendant breached the [2015 Likeness Agreement] by, *among other things*, using Dr. Ellington's Name and Likeness to endorse or approve its products *including* FertilAid For Men." Dkt. # 1 ¶ 90. The claim makes no mention of blogs, nor does it purport to limit the claim to FertilAid For Men. In fact, other allegations suggest that Fairhaven intended for its breach claim to cover much more. For example, Fairhaven alleges that the 2015 Likeness Agreement required Fairhaven to "discontinue all use of and reference to Dr. Ellington's Name and Likeness," a requirement that "survives termination of the agreement." *Id.* ¶ 89. Fairhaven allegedly breached the agreement by "continuing to use her Name and Likeness after [it] terminated the agreement." *Id.* ¶ 90. These allegations suggest that Fairhaven, at least as initially pleaded, intended for the claim to cover any later use of Dr. Ellington's likeness that was not covered by the 2015 Likeness Agreement.

The Court will not ignore the express language of the complaint simply because Plaintiffs request to drop the claim here. Whether Plaintiffs continue to pursue this claim or not, the claim is subject to the 2015 Likeness Agreement's arbitration provision and must be sent to arbitration.

### ii. False Association in Violation of the Lanham Act (Count II) & Infringement of Personality Rights (Count IV)

Plaintiffs' second and fourth claims are also encompassed by the arbitration provision. Though the claims are brought under different statutes, they share a core allegation. Plaintiffs allege that Fairhaven exploited Dr. Ellington's likeness without authorization. Dkt. # 1 ¶¶ 96-97, 125-26. For both claims, Plaintiffs allege that Fairhaven was authorized to use her likeness under the 2015 Likeness Agreement, yet Fairhaven exceeded the authorization when it continued to use her likeness after the agreement was terminated. *Id.* ¶¶ 97, 126. For example, in support of their false association claim, Plaintiffs allege that Fairhaven used Dr. Ellington's likeness without authorization

ORDER – 8

because the 2015 Likeness Agreement "allowed [Fairhaven] to use Dr. Ellington's Name and Likeness only on certain Approved Products, for specified purposes . . . and within a limited duration of time" but "[f]ollowing termination of the [2015 Likeness Agreement] . . . [Fairhaven] did not stop using Dr. Ellington's Name and Likeness." *Id.* ¶ 97. Similarly, in support of their infringement of personality rights claim, Plaintiffs allege that Fairhaven "exploited" Dr. Ellington's likeness without authorization as "[a]ny limited authorization granted to Fairhaven by virtue of the [2015 Likeness Agreement] . . . has expired in its entirety." *Id.* ¶¶ 125-26.

The Court finds that both claims have a significant relationship to the 2015 Likeness Agreement. Both claims are thus governed by the agreement's arbitration provision. The significant relationship is that—as pleaded by Plaintiffs themselves—the 2015 Likeness Agreement demarcates where Fairhaven's permission to use Dr. Ellington's likeness started and stopped. Where the permission stopped and where Fairhaven continued to use Dr. Ellington's likeness is precisely where Counts II and IV begin. To decide these claims, one must determine what Fairhaven's rights were under the 2015 Likeness Agreement, when those rights ended, and what Fairhaven did afterwards. Under *Simula*, these disputes are encompassed by the agreement's arbitration provision and are left for the arbitrator.

Plaintiffs' principal argument is that the IsoLove products cannot be encompassed by the 2015 Likeness Agreement because they were developed years later. Dkt. # 53 at 7-9. According to Plaintiffs, "the parties did not intend to make the IsoLove products subject to the [2015 Likeness Agreement], and never agreed to arbitrate disputes relating to those products." *Id.* at 8.

This argument is unconvincing for three reasons. First, it fails to address the FertilAid For Men products. Plaintiffs do not dispute that those products are clearly within the ambit of the arbitration provision. They merely wish to drop the portions of Counts II and IV that relate to the FertilAid For Men products. *Id.* at 11 n.7. To the

ORDER – 9

extent the claims include FertilAid For Men products, they are undisputedly subject to arbitration.

Second, the argument fails to undermine the significant relationship between the 2015 Likeness Agreement and Counts II and IV. As explained above, in their complaint, Plaintiffs use the 2015 Likeness Agreement as a measuring stick to identify where Fairhaven's permission to use Dr. Ellington's likeness began and where it ended. Plaintiffs argument—that Fairhaven used Dr. Ellington's likeness long after the 2015 Likeness Agreement was terminated to promote different products—does not undermine that relationship. The IsoLove products may have very well been invented and promoted long after the agreement was terminated. As pleaded, Counts II and IV would nevertheless have a significant relationship to the likeness agreement. As they relate to the IsoLove products, the claims would still be premised on the allegations that the 2015 Likeness Agreement defined the scope of Fairhaven's rights to use Dr. Ellington's likeness, that Fairhaven exceeded that scope, and that Plaintiffs are bringing false association and personality infringement rights claims accordingly. *See, e.g.*, Dkt. # 1 ¶ 52 ("[T]he [2015 Likeness Agreement] allowed Fairhaven to use Dr. Ellington's Name and Likeness for limited purposes in connection with specific products, which did not include any of the IsoLove products. . . . Fairhaven nevertheless capitalized on her Name and Likeness for the sales of the IsoLove products . . . .").

Finally, given the preference for arbitration, the Court resolves all doubts in favor of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Counts II and IV are subject to arbitration.

### iii. False Advertising (Count III)

Though a closer call than the previous two claims, Plaintiffs' third claim is also encompassed by the arbitration clause. According to the complaint, Fairhaven "misrepresent[ed] the nature, characteristics and qualities of its products and services." Dkt. # 1 ¶ 111. For example, as to FertilAid For Men, Plaintiffs allege that Fairhaven's

ORDER – 10

marketing materials misrepresented the results of a clinical study conducted by Dr. Ellington. *Id.* ¶¶ 77-85, 111. As to BabyIt, an IsoLove product, Fairhaven allegedly marketed the product as having no irritation potential despite "user feedback" that the product may in fact have a "likelihood of irritation." *Id.* ¶ 70. Plaintiffs claim that those false statements, among others, amount to a violation of the Lanham Act. *Id.* ¶¶ 107-23.

Plaintiffs argue that Count III does not bear a significant relationship to the 2015 Likeness Agreement. Dkt. # 53 at 9-12. They say that the "gravamen" of their allegations do not concern "whether [Fairhaven] used Dr. Ellington's Likeness," but rather whether Fairhaven employed "deceptive practices" and "false and misleading statements" to promote its products. *Id.* at 10.

The question is not, however, whether the 2015 Likeness Agreement is the "gravamen" of Plaintiffs' false advertising claim; it is whether the agreement bears a "significant relationship" to it. *Simula*, 175 F.3d at 721. The Court acknowledges that Dr. Ellington's likeness is not as squarely implicated in Count III (false advertisement) as it is in Counts II and IV (false association and infringement of personality rights). Misrepresentations about a clinical study or the properties of a product may be distinct from Fairhaven's use of Dr. Ellington's likeness. Yet her likeness, and thus the 2015 Likeness Agreement, still bear a significant relationship to Plaintiff's false advertisement claim.

Plaintiffs' factual allegations amply support this conclusion. To start, Plaintiffs allege that Fairhaven "appreciates the value associated with Dr. Ellington's Name and Likeness, which is well recognized among the relevant purchasing public, and takes advantage thereof." Dkt. # 1 ¶ 109. They also allege that the false advertising statements were made while "[c]apitalizing on the use" of Dr. Ellington's likeness. *Id.* ¶ 110. In pleading the interstate commerce element of the claim, Plaintiffs allege that Fairhaven's "widespread unauthorized use" of Dr. Ellington's likeness was done "across various online channels and throughout the country and overseas." *Id.* ¶ 120. Most significantly,

ORDER – 11

Plaintiffs' own allegations claim that Fairhaven has "inextricably linked" Dr. Ellington's likeness to these false and misleading statements. *Id.* ¶ 70 ("Defendant's false and/or misleading advertising of BabyIt harms BioOrigyn and Dr. Ellington, because Defendant's unauthorized use of her Name and Likeness has *inextricably linked* BioOrigyn and Dr. Ellington to this product.") (emphasis added); *Id.* ¶ 85 ("Defendant's false and/or misleading advertising of FertilAid for Men harms Dr. Ellington as well as BioOrigyn because Defendant's unauthorized use of Dr. Ellington's Name and Likeness has *inextricably linked* BioOrigyn and Dr. Ellington to this product.") (emphasis added).

To decide this claim, one must assess the false and misleading nature of Fairhaven's advertisements. To do that would require an inquiry of the extent Fairhaven was permitted to use Dr. Ellington's likeness in those advertisements. Weighing all doubts in favor of arbitration, the Court finds that the "inextricable link" between Dr. Ellington's likeness, the 2015 Likeness Agreement, and Plaintiffs' false advertising claim is a sufficient "significant relationship" under *Simula*. Thus, Count III is subject to arbitration.

### iv. Unfair Business Practices (Count V)

Plaintiffs' final claim for violation of the Washington Consumer Protection Act is also encompassed by the 2015 Likeness Agreement. The factual allegations underlying this claim are substantially the same as the previous. Plaintiffs allege that Fairhaven's advertisements and trade practices, such as the statements it made in promoting FertilAid For Men and BabyIt products, "have the capacity to deceive a substantial portion of the public." Dkt. # ¶¶ 132-34.

Like the previous claim, Plaintiffs' factual allegations bear a significant relationship with the 2015 Likeness Agreement. Plaintiffs allege that Fairhaven "appreciates the value associated with Dr. Ellington's Name and Likeness, which is well recognized among the relevant purchasing public, and takes advantage thereof." *Id.* ¶ 131. And in pleading the public interest element of the claim, Plaintiffs allege that

ORDER – 12

Fairhaven "misused Dr. Ellington's Name and Likeness in a manner that both violates the Lanham Act and infringes the personality rights protected under Washington law, which evidences public deception and confusion caused by Defendant's conducts." *Id.* ¶ 138. Plaintiffs further allege that the misuse "serve[s] a common goal . . . to promote products and services of Defendant to the public." *Id.*

Again, to decide this claim, one must assess the deceptive nature of Fairhaven's advertisements and the extent the public interest was affected. That would require an inquiry of the extent Fairhaven was permitted to use Dr. Ellington's likeness in those advertisements. Weighing all doubts in favor of arbitration, the Court finds a significant relationship between Dr. Ellington's likeness, the 2015 Likeness Agreement, and Plaintiffs' unfair business practices claim. As with the previous four claims, Count V is subject to arbitration.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the parties' motions to seal (Dkt. ## 52, 56) and **GRANTS in part** Fairhaven's Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment (Dkt. # 23). This action is **DISMISSED** in favor of arbitration.

DATED this 3rd day of June, 2021.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 13